## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

NAOCHY CANDELARIA CRUZ, *o/b/o* Y.R.C.,

        Plaintiff,

      v.

KILOLO KIJAKAZI,[1]

        Defendant.

CIVIL ACTION NO. 3:20-CV-02029

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Naochy Candelaria Cruz ("Cruz") brings this action on behalf of her minor son ("Y.R.C.") under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Childs' Supplemental Security Income ("SSI") on behalf of Y.R.C. under Title XVI of the Social Security Act. (Doc. 1). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

On April 12, 2018, Cruz filed an application for benefits under Title XVI of the Social Security Act for her minor son, Y.R.C., for SSI benefits, alleging an onset date of September 1, 2017. (Doc. 12-3, at 26). Cruz's application for benefits was initially denied on August 27,

---

[1] The Court has amended the caption to replace, as the named defendant, Social Security Commissioner Andrew M. Saul, with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

2018, and Cruz filed a timely a request for hearing on October 2, 2018, which Administrative Law Judge ("ALJ") Susan L. Torres held on June 4, 2019. (Doc. 12-3, at 26). In a July 3, 2019, written decision, the ALJ determined that the claimant is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 12-3, at 40). On September 11, 2020, the Appeals Council subsequently denied Cruz's request for review. (Doc. 12-2, at 2).

On November 3, 2020, Cruz commenced the instant action. (Doc. 1). The Commissioner responded on May 17, 2021, providing the requisite transcripts from Y.R.C.'s disability proceedings. (Doc. 11; Doc. 12). The parties then filed their respective briefs, with Cruz raising three principal bases for reversal or remand. (Doc. 19; Doc. 22). This matter is now ripe for decision.

## II.  STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and the Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  A claimant under the age of 18 ("child") shall be considered disabled for under Title XVI of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. §416.906. Notwithstanding the above, no child who engages in substantial gainful activity, as defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. §416.906.

The ALJ employs a three-step evaluation process to determine whether a child is eligible for SSI payments because of disability. As part of this analysis, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a medically determinable, severe impairment; (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.924. If the ALJ finds that the child is not disabled at any point in the sequence, review does not proceed further. 20 C.F.R. §§ 416.924.

In determining functional equivalence, the ALJ evaluates the following six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment is functionally equal to a listed impairment when it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A marked limitation is more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2)(ii). An impairment that only meets some of the criteria of a listed impairment, "no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (holding same).

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather

3

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Y.R.C. is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

4

In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the court reviews the ALJ's findings to determine whether they were supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the decision of the ALJ is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

For effective judicial review to take place, the court "need[s] from the ALJ not only an expression of the evidence s/he [sic] considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

## III.   THE ALJ'S DECISION

The ALJ proceeded through  the three-step sequential evaluation process to determine whether Y.R.C., as an individual under the age of eighteen (18), was disabled. 20 C.F.R. § 416.924(a); (Doc. 12-3, at 29-40). At step one, the ALJ concluded that Y.R.C. has not been engaged in any substantial gainful activity since his application date of April 12, 2018. (Doc. 12-3, at 29). The ALJ then proceeded to step two and determined that Y.R.C. has the following severe impairments: oppositional defiant disorder, adjustment disorder with mixed

5

disturbance of emotions and conduct, mood disorder, and attention deficit hyperactivity disorder. (Doc. 12-3, at 29). Next, at step three, the ALJ determined that Y.R.C. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 in effect on the date the ALJ issued his opinion. (Doc. 12-3, at 29-31). Specifically, the ALJ considered Listings 112.04 – Depressive, bipolar and related disorders, 112.08 - Personality and impulse control disorders, and 112.11 - Neurodevelopmental disorders. (Doc. 12-3, at 29-31).

In determining step three, the ALJ addressed the six domains of functioning and concluded that Y.R.C. does not have an impairment or combination of impairments that functionally equals the severity of one of the listed impairments. (Doc. 12-3, at 31). The ALJ concluded that Y.R.C. has: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for himself; and (6) no limitation in health and physical well-being. (Doc. 12-3, at 33-39). Based on this analysis, the ALJ concluded Y.R.C. has not been disabled, as defined in the Social Security Act, since April 12, 2018, the date the application was filed. (Doc. 12-3, at 39).

## IV.    DISCUSSION

Cruz raises three issues on appeal. (Doc. 19, at 1-2). First, she contends that the ALJ "erred and abused her discretion by failing to properly consider [Y.R.C.'s] limitations under the Functional Domains, when considering his severe impairments . . .  including oppositional defiant disorder ("ODD"), adjustment disorder with mixed disturbance of emotions and conduct, mood disorder, and attention deficit hyperactivity disorder

("ADHD")." (Doc. 19, at 11). Next, she asserts the ALJ erred in finding Y.R.C.'s other impairments, including his anxiety disorder and depression, not severe, and thereby failing to consider them in his functional domain analysis. (Doc. 19, at 18). Lastly, Cruz argues the ALJ erred in relying upon the findings of the State Agency Consultant as opposed to the opinions offered in the teacher questionnaires and the opinion of Y.R.C.'s social worker, Ms. Gonzalez. (Doc. 19, at 20). The Court concludes that the ALJ did not err and that substantial evidence supports her decision.

A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION THAT Y.R.C.'S SEVERE IMPAIRMENTS DO NOT FUNCTIONALLY EQUAL A LISTING.

First, Cruz argues that "[t]he ALJ erred and abused her discretion by failing to properly consider [Y.R.C.'s] limitations under the Functional Domains, when considering his severe impairments as identified by the ALJ, including [ODD], adjustment disorder with mixed disturbance or emotions and conduct, mood disorder, and [ADHD]." (Doc. 19, at 11). Cruz contends the limitations caused by Y.R.C.'s severe impairments are consistent with findings of marked limitations in at least the domains of (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) caring for oneself. (Doc. 19, at 15). However, to the extent Cruz asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." See *Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015). Substantial evidence supports the ALJ's findings that Y.R.C. has less than marked limitations

in acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for himself. (Doc. 12-3, at 33-38).

1. **Substantial evidence supports the ALJ's finding that Y.R.C. has a less than marked limitation in the functional domain of acquiring and using information.**

First, Cruz argues that the ALJ erred in finding that Y.R.C. suffers from less than marked limitation in acquiring and using information. (Doc. 19, at 15, 17). When evaluating a child's limitations in this domain, the ALJ must consider how well the child acquires or learns information, and how well the child uses the information he or she has learned. 20 C.F.R. § 416.926a(g). Some examples of limitations in this domain include: not demonstrating an understanding of words about space, size, or time; an inability to rhyme words or the sounds in words; having difficulty recalling important things that were learned in school the previous day; difficulty in solving mathematics questions; only talking in short, simple sentences; and having difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3)(i)-(v).

Cruz argues that Y.R.C. has at least marked limitations in this domain. (Doc. 19, at 15). Cruz argues that Y.R.C.'s identified severe impairments of ODD, adjustment disorder with mixed disturbance of emotions and conduct, mood disorder, and ADHD warrant a finding of a marked limitation in the functional domain of acquiring and using information. (Doc. 19, at 11). Cruz's brief lacks a specific argument as to which limitations the ALJ failed to reasonably consider for this functional domain and thereby fails to show error. *See Hutcheson v. Berryhill*, No. 3:16-CV-2023, 2017 WL 3581675, at *26 (M.D. Pa. Aug. 18, 2017) (finding that the Plaintiff needed to specify how the ALJ erred in a functional domain analysis). The impairments that could be considered as demonstrating an issue in the

functional domain of acquiring and using information include: an Individualized Education Program ("IEP") for learning support and behavioral issues; and an evaluation noting disability for learning and behavioral issues, qualifying the child for special education services. (Doc. 19, at 13). However, the ALJ addressed Y.R.C.'s these limitations in her conclusion that Y.R.C. "has less than marked limitation in acquiring and using information." (Doc. 12-3, at 34).

The ALJ discussed relevant record evidence directly relating to the applicable functional domain in reaching his determination. (Doc. 12-3, at 34). The ALJ did not rely solely on specific aspects of the medical records, as Cruz argues. (Doc. 19, at 14). Instead, the ALJ relied on the questionnaires completed by Y.R.C.'s teachers; the opinions of Dr. Purcell, a psychologist and Dr. Gavazzi, a DDS psychologist; and the testimony of Y.R.C. and Cruz. (Doc. 12-3, at 34).

On Y.R.C.'s fourth-grade teacher completed a questionnaire stating that Y.R.C. had problems functioning in acquiring and using information.[2] (Doc. 12-7, at 45). Additionally, on March 21, 2019, Lisa Wolbrette ("Ms. Wolbrette"), Y.R.C.'s fifth-grade teacher, completed a questionnaire stating that Y.R.C. had problems functioning in acquiring and using information. (Doc. 12-7, at 45, 68). Y.R.C.'s fourth grade teacher and Ms. Wolbrette stated that Y.R.C. has a slight problem comprehending oral instructions, understanding

---

[2] The ALJ refers to Y.R.C.'s fourth grade teacher as "an unidentified fourth grade teacher." (Doc. 12-3, at 33). Upon review of Y.R.C.'s transcripts and classroom schedule, the Court believes that Y.R.C.'s fourth grade teacher was Ms. Wolbrette. (Doc. 12-7, at 38). However, the Court will refer to the "unidentified teacher" as "Y.R.C.'s fourth grade teacher."

school and content vocabulary, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussion. (Doc. 12-7, at 45, 68). Y.R.C.'s fourth grade teacher also stated that he has a slight problem reading and comprehending written material, understanding and participating in class discussions; and an obvious problem comprehending and doing math problems and providing organized oral explanations and adequate descriptions. (Doc. 12-7, at 45). Y.R.C.'s fourth grade teacher further remarked that when Y.R.C. needs help "he will often times put his head down and not ask. Time and space will normally help him get back on track." (Doc. 12-7, at 45). However, Ms. Wolbrette noted that Y.R.C. has no problem understanding and participating in class discussions; a slight problem comprehending and doing math problems, providing organized oral explanations and adequate descriptions; and an obvious problem reading and comprehending written material. (Doc. 12-7, at 68). The ALJ found the opinions of Y.R.C.'s fourth grade teacher and Ms. Wolbrette's persuasive. (Doc. 12-3, at 33-34).

The ALJ also considered the opinion of Dr. Purcell that Y.R.C. "completed third grade in education." (Doc. 12-3, at 34; Doc. 12-8, at 122). Additionally, the ALJ stated that Dr. Gavazzi found no limitation in the functional domain of acquiring and using information. (Doc. 12-3, at 34; Doc. 12-4, at 7). The ALJ also considered that Y.R.C. stated he completed the fourth grade with good grades. (Doc. 12-3, at 34, 52). Finally, the ALJ noted that Y.R.C. does not present evidence of a learning disability, repeating grades, or low IQ scores, although Cruz had recently asked for an IEP. (Doc. 12-3, at 34). Accordingly, the ALJ cited to substantial evidence indicating less than marked limitations in the area of acquiring and using information. (Doc. 12-2, at 20).

10

Additionally, Cruz argues that the ALJ failed to consider evidence of Y.R.C.'s IEP for learning and behavior issues and an evaluation noting disability for learning and behavioral issues. (Doc. 19, at 13). Cruz contends that "[t]he ALJ stated in her decision that there was no IEP for the child . . . [and that there] were no special education services, nor is there evidence of a learning disability." (Doc. 19, at 13). However, this evidence was not presented before the ALJ. The ALJ crafted her decision upon evidence that Y.R.C.'s mother had recently asked for IEP and that Y.R.C. had completed fourth grade with good grades. (Doc. 12-3, at 34, 53, 63).

Remand may be appropriate if a claimant produces new and material evidence that was not before the ALJ. When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g), 42 U.S.C. ("Sentence Six"). *See Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir.1984); *Matthews v. Apfel*, 239 F.3d 589, 591-92 (3d Cir. 2001). Sentence Six requires a remand when evidence is "new" and "material" if the claimant demonstrated "good cause" for not having incorporated the evidence into the administrative record. *Szubak*, 745 F.2d at 833. The materiality standard "requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Szubak*, 745 F.2d at 833. In order to be material, "the new evidence [must] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 F.2d at 833. The relevant time period is "the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); *Mathews*, 239 F.3d at 592; *see also* 20 C.F.R. § 416.1470(b).

Here, the evidence presented to the Appeals Council regarding Y.R.C.'s evaluation noting learning and behavioral disability and an IEP occurred after the ALJ's hearing decision and was outside of the relevant time period. (Doc 12-3, at 40). The evaluation report noting that Y.R.C. had a learning and behavioral disability is dated October 15, 2019. (Doc. 12-2, at 61). Y.R.C.'s IEP was implemented on November 8, 2019. (Doc. 12-2, at 28). The ALJ made her hearing decision on July 3, 2019. (Doc. 12-3, at 40). Thus, the evaluations that note Y.R.C.'s learning and behavioral disability that was drafted on October 15, 2019, and Y.R.C.'s IEP that was implemented on November 8, 2019, are outside of the "relevant adjudicatory period" and are not "material." *See Szubak*, 745 F.2d at 833.

**2.  Substantial evidence supports the ALJ's finding that Y.R.C. has a less than marked limitation in the functional domain of attending and completing tasks.**

Next, Cruz argues that the ALJ erred in finding that Y.R.C. suffers from less than marked limitations in attending and completing tasks. (Doc. 19, at 14). When evaluating a child's ability in this domain, the ALJ must consider how well the child is able to focus and maintain his or her attention, and how well the child begins, carries through, and finishes his or her activities, including the pace at which the child performs activities and the ease in which the child changes between them. 20 C.F.R. § 416.926a(h). Some examples of limitations in this domain include: being overly startled, distracted, or over-reactive to sounds, sights, movements, or touch; being slow to focus on, or failing to complete activities of interest to the child; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including those the child is capable of completing; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i-v).

Cruz argues that the ALJ only noted some of Y.R.C.'s limitations but that she failed to review the record as a whole. (Doc. 19, at 13-17). However, Cruz fails to specify what specific limitations the ALJ did not consider as they pertain to the functional domain of attending and completing tasks. *See Hutcheson*, 2017 WL 3581675, at *26. The impairment that could be considered as demonstrating an issue in the functional domain of attending and completing tasks include: a notation from the school that Y.R.C. has continued off task and negative behavior. (Doc. 19, at 13-14). The ALJ addressed Y.R.C.'s  limitations in her conclusion that Y.R.C. "has less than marked limitation in attending and completing tasks." (Doc. 12-3, at 35).

The ALJ considered the teacher questionnaire from Y.R.C.'s fourth grade teacher and Ms. Wolbrette; the medical opinions of Dr. Sekhar, a pediatrician and Dr. Gavazzi; and Cruz's testimony in assessing the functional domain of attending and completing tasks to reach her determination. (Doc. 12-3, at 35).

Y.R.C.'s fourth grade teacher noted in her teacher questionnaire that Y.R.C. has problems functioning in the domain of attending and completing tasks. (Doc. 12-7, at 46). Y.R.C.'s fourth grade teacher stated that he has a slight problem paying attention when spoken to directly, sustaining attention during play/sports activities, refocusing to task when necessary, carrying out single-step instructions, waiting to take turns, organizing own things or school materials, and completing work accurately without careless mistakes; an obvious problem focusing long enough to finish assigned activity or task, carrying out multi-step instructions, changing from one activity to another without being disruptive, working without distracting himself or others, working at a reasonable pace/finishing on time on a daily basis; and a serious problem completing class and homework assignments all on a daily basis. (Doc.

13

12-7, at 46). Finally, Y.R.C.'s fourth grade teacher explained that Y.R.C. frequently "has to be redirected for making sound effects [and] noise with his mouth (like a spaceship) and playing with pencils (tapping them) during work time [and i]t is often disruptive." (Doc. 12-7, at 46). The ALJ found Y.R.C.'s fourth grade teacher's opinion persuasive. (Doc. 12-3, at 33, 35).

Ms. Wolbrette stated that Y.R.C. has no problem waiting to take turns; a slight problem on a weekly basis sustaining attention during play or sports activities, carrying out single-step instructions, carrying out multi-step instructions, organizing his own things or school materials, and working at a reasonable pace or finishing on time; an obvious problem on a weekly basis paying attention when spoken to directly, focusing long enough to finish an assigned activity or task, and completing class or homework assignments; and obvious problems on a daily basis refocusing to a task when necessary, changing from one activity to another without being disruptive, and working without distracting himself or others. (Doc. 12-7, at 70). The ALJ found Ms. Wolbrette's opinion persuasive. (Doc. 12-3, at 3, 35).

Further, the ALJ considered the opinion of Dr. Sekhar who diagnosed Y.R.C. with having ADHD and Cruz's statement that Y.R.C. takes medication for the condition. (Doc. 12-3, at 36). The ALJ also considered Dr. Gavazzi's opinion that Y.R.C. has no limitation in the functional domain of attending and completing tasks. (Doc. 12-3, at 35). Accordingly, the ALJ cited substantial evidence supporting a less-than-marked limitation in this area. *See Cortes ex rel. J.C. v. Comm'r of Soc. Sec.*, No. 2:11-CV-5819 WJM, 2013 WL 795599, at *5 (D.N.J. Mar. 4, 2013) (holding that the ALJ's finding of a less than marked limitation in the domain of attending and completing tasks was supported by substantial evidence in part because the claimant's teachers did not report significant limitations in this domain).

14

**3. Substantial evidence supports the ALJ's finding that Y.R.C. has a less than marked limitation in the functional domain of interacting and relating with others.**

Third, Cruz argues that the ALJ erred in finding that Y.R.C. suffers from less than marked limitation in interacting and relating with others. (Doc. 19, at 14). When evaluating a child's limitations in the area of "interacting and relating with others" an ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his or her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Examples of limitations in this domain include: having no close or age appropriate friends; avoiding or withdrawing from people the child knows; being overly anxious or fearful when meeting new people or trying new experiences; difficulty cooperating with others; having difficulty playing games or sports with rules; and difficulty communicating with others (i.e., difficulty in using appropriate verbal and nonverbal cues when expressing him or herself, carrying on a conversation, or asking others for assistance); and difficulty in speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3)(i)-(vi); SSR 09-5p, 2009 WL 396026 at *6-7.

Cruz argues the ALJ failed to address Y.R.C.'s limitations; however, she fails to specify what limitations the ALJ did not consider for the functional domain of interacting and relating with others. *See* Hutcheson, 2017 WL 3581675, at *26. The impairments that could be considered as demonstrating an issue in the functional domain of interacting and relating with others include: Y.R.C. was suspended from school in February, 2019 for two days due to his behavior; school notations of aggressive and inappropriate language and behavior, with a lot of early school dismissals and attendance issues; behavior issues at school and shutting down

15

in class; testing that confirmed well below average adaptive behavior, borderline attention and executive functioning, and emotional and behavioral issues; impulsivity with sexual acting out; defying rules at home, school, and Boy Scouts; and refusal to speak during sessions. (Doc. 19, at 13-14).

The ALJ addressed Y.R.C.'s limitations in her conclusion that Y.R.C. "has less than marked limitation in interacting and relating with others." (Doc. 12-3, at 35). The ALJ addressed these issues and stated that

> [Y.R.C.] has some issues with behavior (Exhibit 5F/10). At the hearing, the claimant's mother testified about [Y.R.C.'s] lying and stealing things. However, there is no indication in the record that [Y.R.C.] has been placed in an alternative school or that [Y.R.C.] has had a behavior plan at school. There is also no indication in the record that [Y.R.C.] has had any legal problems or psychiatric admissions for behavior. Dr. Gavazzi opined on August 27, 2018 that [Y.R.C.] has only a less than marked limitation in this domain (Exhibit lA/6). In her responses dated March 21, 2019 to a Teacher Questionnaire, Ms. Wolbrette noted that [Y.R.C.] has only a slight problem in playing cooperatively with other children (Exhibit 1 lE/4). Ms. Wolbrette also noted that [Y.R.C.] has only a slight problem in making and keeping friends (Exhibit l lE/4). In the undated responses to a Teacher Questionnaire, an unidentified fourth grade teacher stated that [Y.R.C.] has no problems in relating experiences and telling stories (Exhibit 6E/1 5). Said teacher also stated that [Y.R.C.] has no problems in using language appropriate to the situation and listener (Exhibit 6E/1 5).

(Doc. 12-3, at 37).

The ALJ pointed to the teacher questionnaires in his assessment and addressed Y.R.C.'s limitations. (Doc. 12-3, at 37). Y.R.C.'s fourth grade teacher noted that he has problems interacting and relating with others. (Doc. 12-7, at 47). Y.R.C.'s fourth grade teacher found that Y.R.C. has no problem relating experiences and telling stories, using language appropriate to the situation and listener, taking turns in a conversation, interpreting meaning of facial expression, body language, hints, and sarcasm, and using adequate

16

vocabulary and grammar to express thoughts and ideas in general, everyday conversation; a slight problem playing cooperatively with other children, making and keeping friends, asking permission appropriately; an obvious problem seeking attention appropriately, following rules in the classroom, games, and sports, and respecting and obeying adults in authority; and a serious problem expressing anger appropriately all on a daily basis. (Doc. 12-7, at 47).

Ms. Wolbrette noted that Y.R.C. has a slight problem playing cooperatively with other children, making and keeping friends, relating experiences and telling stories, taking turns in conversation, interpreting meaning of facial expression, body language, hints, and sarcasm, and using adequate vocabulary and grammar to express his thoughts and ideas in general, everyday conversation; and an obvious problem seeking attention appropriately, expressing anger appropriately, asking permission appropriately, follow rules of the classroom, games, and sports, responding and obeying adults in authority, using language appropriate to the situation and listener, and introducing and maintain relevant and appropriate topics of conversation all on a weekly basis. (Doc. 12-7, at 72). Ms. Wolbrette also noted that [Y.R.C.] "likes to please, but often times needs redirection to stay on task." (Doc. 12-7, at 72). Both Y.R.C.'s fourth grade teacher and Ms. Wolbrette stated that they can understand Y.R.C.'s speech on the first attempt almost all of the time. (Do. 12-7, at 48, 72). The ALJ found the opinions of Y.R.C.'s fourth grade teacher and Ms. Wolbrette's persuasive. (Doc. 12-3, at 33, 37).

The ALJ noted that Y.R.C. has some issues with behavior and discussed Cruz's testimony that Y.R.C. has lied and stolen things. (Doc. 12-3, at 37). However, the ALJ also explained that Y.R.C. has never "been placed in an alternative school, . . . had a behavior plan at school, had any legal problems[,] or psychiatric admission for behavior." (Doc. 12-3,

at 37). Additionally, the ALJ discussed the opinion of Dr. Gavazzi who stated that Y.R.C. has a less than marked limitation in interacting and relating with others. (Doc. 12-3, at 37; Doc. 12-4, at 7). Accordingly, the ALJ determined that Y.R.C. has a less than marked limitation in the functional domain of interacting and relating with others based on substantial evidence.

### 4. Substantial evidence supports the ALJ's finding that Y.R.C. has a less than marked limitation in the functional domain of caring for oneself.

Finally, Cruz argues that the ALJ erred in finding that Y.R.C. suffers from less than marked limitations in the ability to care for herself. (Doc. 19, at 14). The regulations on the domain of caring for yourself explain the evaluation criteria, in pertinent part, as follows:

> In this domain, we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.

> School-age children (age 6 to attainment of age 12). You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. §§ 416.926a(k); (k)(2)(iv).

Cruz argues that the ALJ failed to address Y.R.C.'s limitations; however, she fails to specify what limitations the ALJ did not consider specifically for the function domain of caring for oneself. *See Hutcheson*, 2017 WL 3581675, at *26. The impairments that could be

considered as demonstrating an issue in the functional domain of caring for oneself include: mood swings and physical aggression; being at risk to be placed outside of his home due to his behavior; increase in highly emotional behavior; limited insight and impaired judgment; and significant trouble sleeping. (Doc. 19, at 14).

The ALJ addressed Y.R.C.'s limitations and concluded that Y.R.C. has less than marked limitation in the ability to care for himself. (Doc. 12-3, at 37-38). The ALJ considered the teacher evaluations of Y.R.C.'s fourth grade teacher and Ms. Wolbrette, the medical opinions of Dr. Purcell and Dr. Gavazzi, and the testimony from Cruz. (Doc. 12-3, at 38).

In her teacher questionnaire, Y.R.C.'s fourth grade teacher noted that he has no problem taking care of his personal hygiene, caring for his physical needs, and cooperating in, or being responsible for, taking needed medications; a slight problem using good judgment regarding personal safety and dangerous circumstances; an obvious problem responding appropriately to changes in his mood and knowing when to ask for help; and a serious problem handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, and using appropriate coping skills to meet daily demands of the school environment all on a daily basis. (Doc. 12-7, at 49). Additionally, Y.R.C.'s fourth grade teacher stated that "when [Y.R.C.] shuts down from any frustration, he is often times unwilling to communicate his wants or needs." (Doc. 12-7, at 49). The ALJ found Y.R.C.'s fourth grade teacher's opinion persuasive. (Doc. 12-3, at 33, 38).

Ms. Wolbrette opined that Y.R.C. has no problem cooperating in, or being responsible for taking needed medications and an obvious problem handling frustration appropriately, being patient when necessary, using good judgment regarding personal safety an dangerous circumstances, identifying and appropriately asserting emotional needs, responding

appropriately to changes in his own mood, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help all on a daily basis. (Doc. 12-7, at 73). Additionally, Ms. Wolbrette stated that her "biggest concern is that [Y.R.C.] will often times shut down completely when an undesired occurrence happens." (Doc. 12-7, at 73). The ALJ found Ms. Wolbrette's opinion persuasive. (Doc. 12-3, at 33, 38).

The ALJ also noted Dr. Purcell's report that Cruz had stated that Y.R.C. "has been 'crying over little things'" and that Cruz testified that Y.R.C. "has some problems managing anger and emotions." (Doc. 12-3, at 38). The ALJ weighed this evidence with Dr. Gavazzi's opinion that Y.R.C. has only a less than marked limitation in his ability to care for himself and the teacher questionnaires from Y.R.C.'s fourth grade teacher and Ms. Wolbrette. (Doc. 12-3, at 38). Additionally, the ALJ noted that Y.R.C. "testified that he helps his mother with some chores [and that t]here is no indication in the record that the claimant has had any inpatient or partial psychiatric admissions for anger or emotional regulation." (Doc. 12-3, at 38).

The ALJ did not fail to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. The ALJ also adequately explained her decision, because she gave "not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705. Thus, substantial evidence supports the ALJ's finding of a less than marked limitation in the domain of caring for oneself.

B. Substantial evidence supports the ALJ's decision that Y.R.C.'s other impairments, including anxiety disorder and depression, did not functionally equal a listing.

Cruz asserts that the ALJ failed to consider Y.R.C.'s anxiety disorder and depression when assessing his functional domains. (Doc. 19, at 19). Cruz states that Y.R.C.'s diagnosis of anxiety disorder and depression is supported by the medical records and that the ALJ failed to have Y.R.C. examined by a consultative exam physician or medical expert to testify to Y.R.C.'s impairments. (Doc. 19, at 19-20). These conditions, according to Cruz, "clearly have more than a slight impact on [Y.R.C.'s] ability to function, and should have been considered" by the ALJ. (Doc. 19, at 19).

The ALJ's severity determination at step two must be upheld if it is supported by substantial evidence. *Bricker v. Astrue*, No. 10-cv-458, 2010 WL 4984214, at *4 (W.D. Pa. Dec. 2, 2010); *citing McCrea v. Commissioner of Soc. Sec.*, 370 F.3d 357, 360–61 (3d Cir. 2004). "In a child's claim for benefits, an impairment is not severe if the evidence establishes no more than a minimal effect on a claimant's ability to function in an age-appropriate manner." *Bricker*, 2010 WL 4984214, at *4 (citing 20 C.F.R. § 415.924(c)). Additionally, "even if the record could sustain an alternative conclusion, the ALJ's decision regarding disability will not be overturned as long as there is substantial evidence to support it." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (examining *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)).

The ALJ examined Listings 112.04 – Depressive, bipolar and related disorders, 112.08 – Personality and impulse-control disorders, and 112.11 – Neurodevelopmental disorders and found that Y.R.C.'s mental impairments did not "meet or medically equal any mental listings." (Doc. 12-3, at 29-31). Additionally, the ALJ considered Dr. Gavazzi's opinion

21

persuasive in that no listing was met or equaled and noted Dr. Gavazzi's qualifications as a DDS psychologist. (Doc. 12-3, at 31; Doc. 12-4, at 7).

The ALJ further considered Y.R.C.'s mental impairments when considering whether he had "an impairment or combination of impairments that functionally quals the severity of the listing." (Doc. 12-3, at 31-33). The ALJ considered Cruz's opinion regarding the affect that Y.R.C.'s medication had on his ability to sleep and his mood. (Doc. 12-3, at 32). The ALJ discussed the medical opinions of Dr. Medzoyan, a psychiatrist; Dr. Sekhar, a pediatrician; Dr. Purcell, a psychologist; and Dr, Gavazzi, a DDS psychologist. (Doc. 12-3, at 32-33; Doc. 12-8, at 63-69, 119-124; Doc. 12-4, at 7). In their findings Dr. Medzoyan noted Y.R.C.'s "high level of anxiety," Dr. Purcell noted that Y.R.C. "exhibits anxiety," and Dr. Gavazzi stated that Y.R.C.'s "symptoms include depression [and] anxiety." (Doc. 12-8, at 64, 123; Doc. 12-4, at 7). Specifically, the ALJ considered Dr. Purcell's note regarding Cruz's report about Y.R.C.'s increase in anxiety and emotional behaviors. (Doc. 12-3, at 32; Doc. 12-8, at 121). The ALJ stated that "[d]espite the claimant's mental impairments, Dr. Purcell indicated on July 18, 2018[,] that the claimant has a bright affect and a euthymic mood (Exhibit 5F/12). Dr. Purcell also indicated that the claimant denies suicidal and homicidal ideation (Exhibit 5F/12)." (Doc. 12-3, at 32; Doc. 12-8, at 123). The ALJ found that

> [t]he records show that [Y.R.C.] is responding well to treatment. On July 18, 2018, Dr. Purcell indicated that [Y.R.C.] participates in Cub Scouts, which supports some ability to interact (Exhibit 5F/1 l). Dr. Purcell's mental status examination of [Y.R.C.] on July 18, 2018 shows that [Y.R.C.'s] thought processes are clear and logically organized (Exhibit 5F/12). Dr. Purcell noted that [Y.R.C.] has no perceptual abnormalities (Exhibit 5F/12). Additionally, Dr. Purcell noted that [Y.R.C.'s] presentation is suggestive of average intellectual functioning (Exhibit 5F/12). Records from Pennsylvania Counseling Services, Inc. show progress, although [Y.R.C.] has had setbacks at times. It appears that [Y.R.C.] is improving and the mental status

examinations, treatment records, and Teacher Questionnaires do not support disability.

(Doc. 12-3, at 33)

Additionally, the ALJ considered Y.R.C.'s mental health in the discussion of her limitations in attending and completing tasks, interacting and relating with others, and caring for yourself. (Doc. 12-3, at 35-38).

The ALJ thoroughly explained her reasoning that Y.R.C.'s mental impairments were not severe and discussed the medical opinions from the doctors who diagnosed Y.R.C. with anxiety and depression. (Doc. 12-3, at 32-33; Doc. 12-8, at 63-69, 119-124; Doc. 12-4, at 7). Thus, substantial evidence supports the ALJ's determination that Y.R.C.'s anxiety and depression are not severe.

In essence, Cruz argues the ALJ should have lent more credence to her preferred pieces of evidence. (Doc. 19, at 19). However, it is not the role of the Court to substitute its judgment for that of the ALJ. *See* Social Security Act, § 205(g), 42 U.S.C.A. § 405(g). The standard here is substantial evidence, which is deferential to the judgment of the ALJ. *Rutherford*, 399 F.3d at 552. The ALJ's duty is to weigh the evidence and resolve conflicts. *See Richardson*, 402 U.S. at 410 (clarifying that when the record contains conflicting medical evidence, the ALJ must weigh that evidence and resolve the conflict); *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted) (explaining that an ALJ may weigh credibility of the evidence).

The Court finds that substantial evidence supports the ALJ's findings regarding the severity of Y.R.C.'s impairments. The ALJ relied primarily on evidence in the record to determine the severity of Y.R.C.'s symptoms and discussed such evidence thoroughly when

23

reaching his conclusion. (Doc. 12-3, at 29-39). Accordingly, substantial evidence supports the ALJ's consideration of Y.R.C.'s other mental impairments. *See Bricker*, 2010 WL 4984214, at *4 -*5 (finding that the ALJ's failure to include the claimant's mental impairments in step two was supported by substantial evidence when the ALJ thoroughly discussed the medical record as it pertained to the claimant's mental limitations).

C. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S USE OF THE TEACHER QUESTIONNAIRES AND THE ALJ'S CONSIDERATION OF MS. GONZALEZ'S OPINION.

Cruz contends that "[t]he ALJ erred and abused her discretion by relying upon the findings of the State Agency Consultant, who never examined [Y.R.C.], and offered opinions without most of the medical evidence submitted in this matter, as opposed to the opinions offered in the Teacher Questionnaires and [Y.R.C.'s] social worker, Ms. Gonzalez." (Doc. 19, at 20).

The ALJ relied heavily on the teacher questionnaires in her functional domain analysis and found them "persuasive." (Doc. 12-3, at 33-39). Cruz argues that "[t]he ALJ did not appear to base any of his findings regarding [Y.R.C.'s] limitations" found by Y.R.C.'s fourth grade teacher and Ms. Wolbrette. (Doc. 19, at 20). The ALJ discussed Y.R.C.'s fourth grade teacher and Ms. Wolbrette's teacher questionnaires regarding Y.R.C.'s ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, care for himself, and his health and physical well-being. (Doc. 12-3, at 33-39). The ALJ thoroughly discussed the teacher questionnaires and cited them in his functional domain analysis. (Doc. 12-3, at 18, 33-39); *see supra*. As discussed *supra*, the ALJ's reliance on the teacher questionnaires is supported by substantial evidence. (Doc. 12-2, at 18, 20-24; 12-6, at 4-11, 90-96). The ALJ clearly utilized the teacher questionaries in her opinion

and the court may not reweigh the evidence in its determination. *See Burns,* 312 F.3d at 118. As such, substantial evidence supports the ALJ's use of the teacher questionaries and reliance on the state agency consultant reports, as she utilized a wide array of evidence in her analysis.

Additionally, the ALJ adequately considered the opinion of Y.R.C.'s social worker Ms. Gonzalez. (Doc. 12-3, at 32). As a social worker, Ms. Gonzalez does not qualify as an "acceptable medical source." *See* 20 C.F.R. § 416.902(a)(1)-(a)(2); *Barzyk v. Saul,* No. 4:18-CV-02262, 2020 WL 1272511, at *13 n.5 (M.D. Pa. Feb. 18, 2020), *report and recommendation adopted*, No. 4:18-CV-02262, 2020 WL 1244591 (M.D. Pa. Mar. 16, 2020). However, the ALJ still examined Ms. Gonzalez's findings. (Doc. 12-3, at 32). The ALJ explained that Ms. Gonzalez

> indicated on July 23, 2018 that the claimant's mother shared that the claimant has regressed in behaviors again and has begun to defy school rules, house rules, and Cub Scout rules (Exhibit 7F /20). On September 24, 2018, Ms. Gonzalez stated that the claimant is still having up and down moments in the community and in the school setting (Exhibit 7F/16). Ms. Gonzalez noted on April 16, 2019 that the claimant was exposed to domestic violence in early childhood (Exhibit 7F/6). Ms. Gonzalez also noted that the claimant had been doing well and is now going backwards (Exhibit 7F /7).

(Doc. 12-3, at 32).

Additionally, the ALJ noted that "On December 3, 2018, Ms. Gonzalez stated that the claimant has been more regulated on his medications (Exhibit 7F/13). Ms. Gonzalez noted on April 16, 2019 that the claimant has been doing well (Exhibit 7F/6)." (Doc. 12-3, at 32).

Thus, the ALJ considered the opinion of Ms. Gonzalez along with other evidence in crafting her opinion. (Doc. 12-3, at 32). Substantial evidence supports the ALJ's opinion as it pertains to the statements from Ms. Gonzalez.

V.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision to deny Cruz disability benefits be **AFFIRMED,** final judgment be issued in favor of the Commissioner, and the Clerk of Court be directed to close this case.

An appropriate Order follows.

Dated: February 22, 2022            *s/ Karoline Mehalchick*
                                             **KAROLINE MEHALCHICK**
                                             **Chief United States Magistrate Judge**